FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 20, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JACOB A.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 1:26-cv-3105-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Jacob A. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to his anxiety and depression symptoms.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

Substantial evidence does not support the ALJ's evaluation of Plaintiff's symptom claims and the medical opinions. This matter is remanded for more proceedings due to the ALJ's consequential errors.

## I. Background

On September 25, 2023, at the age of 21, Plaintiff filed his Title 16 application for supplemental security income benefits.[2] Plaintiff had been in special education classes and stopped attending school in the ninth grade due to anxiety.[3]

In August 2025, Plaintiff appeared for a video hearing before ALJ Diana Erickson, during which Plaintiff and a vocational expert testified.[4] Plaintiff testified that he lived with his mom, stepdad, and teenage sister, along with their household pets, which he helped take

---

[2] Administrative Record (AR) 210–14 (application); AR 17, 41–42 (amending onset date). *See* 20 C.F.R. § 416.335.

[3] AR 43, 49; AR 250 (2018 Individualized Education Plan: "He had difficulty sustaining his attention, staying organized, and following directions.").

[4] AR 38–67.

care of by occasionally feeding and walking them, but he acknowledged his mom did the bulk of the chores including his laundry.[5] He stated that he did not have a driver's license and did not ride the bus because there were "too many people."[6] He mentioned that he applied for a job at a fast food restaurant but then he chose not to attend the interview, and he had applied for work-from-home jobs but had not gotten any interviews for such positions.[7] He stated that on a typical day he woke up late morning, ate breakfast, hung out, then got in the pool, which he would sometimes clean, and then he would go back inside the house to eat dinner, play video games for about 4–5 hours, watch television for about 3 hours, and then go to bed.[8] He stated that twice a week he

---

[5] AR 47, 51–52.

[6] AR 48–49.

[7] AR 50–51.

[8] AR 52–53, 55. In the response, the Commissioner states that Plaintiff testified that "he could leave home to walk his dogs and spend time at a pool." ECF No. 12 at 9 (citing AR 51, 369). The pool was at Plaintiff's home. ECF No. 13 at 4; AR 51–53, 369.

cooks simple meals for himself.[9] He testified that he used to play basketball with friends but had not played for 2–3 years due to anxiety leaving the house.[10] He also stated he does not go to stores, with the last visit being a year prior to a 7-11.[11] He does not attend family gatherings outside of his home, religious observances, or similar events.[12] Plaintiff stated that if he goes to public places he will become anxious, causing dizziness, tunnel vision, and a racing heart.[13] He stated that his medication helps prevent anxiety when he is at home.[14] He testified that he experiences depression symptoms, including oversleeping and no motivation, about once a year for a few days to a week.[15] Plaintiff stated that other than the testified-to anxiety and

---

[9] AR 52. AR 300, 308.

[10] AR 54.

[11] AR 55.

[12] AR 55–56.

[13] AR 57.

[14] AR 58.

[15] AR 58–59.

depression symptoms he does not have problems with concentration, memory, or focus, or following a schedule.[16]

The ALJ issued a decision finding Plaintiff not disabled.[17] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[18] The ALJ considered the lay statement from Plaintiff's mother.[19] As to the medical opinions, the ALJ found:

- The reviewing opinion of Sean McDonald, PsyD, largely persuasive.
- The prior administrative findings of Gerald G., PhD, and John W., PhD, partially persuasive.

---

[16] AR 60.

[17] AR 14–33. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[18] AR 23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

[19] AR 26.

- The examining opinion of David Morgan, PhD, and reviewing opinion of Luci Carstens, PhD, PS, not persuasive.[20]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 25, 2023, the amended alleged onset date and date of application.
- Step two: Plaintiff had the medically determinable severe impairments of major depressive disorder and generalized anxiety disorder.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant can understand, remember, and carry out simple instructions. The claimant can use judgment to make simple, work-related decisions. The claimant should have no interaction with the public as

---

[20] AR 25–26.

part of the job duties and can tolerate no more than frequent interaction with coworkers and supervisors.

- Step four: Plaintiff has no past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as janitor, hand packager, and garment hanger.[21]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff now appeals to district court.[23]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[24] Thus, the

---

[21] AR 17–28.

[22] AR 1–6.

[23] ECF No. 1.

[24] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

ALJ must articulate her findings and cite such supporting evidence to permit the court to meaningfully review the ALJ's findings.[25]

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[26] and such error impacted the nondisability determination.[27] Substantial evidence is

---

[25] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[27] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28]

## III. Analysis

Plaintiff argues the ALJ erred by not properly assessing his reported symptoms or the medical opinions and prior administrative medical findings. In response, the Commissioner argues no error occurred and that the ALJ's decision is supported by substantial

---

not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[28] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

evidence. As is explained below, the ALJ failed to adequately consider the context and nature of Plaintiff's activities and the context in which "normal" medical observations and findings were made. These failures impacted the crafted RFC and nondisability determination.

**A. Symptom Reports: Plaintiff establishes consequential error.**

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[29] If the ALJ

---

[29] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) objective medical evidence; (2) daily activities; (3) the location, duration, frequency, and intensity of pain or other symptoms; (4) factors that precipitate and aggravate the symptoms; (5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and (7) any non-treatment measures the

finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[30] This requires the ALJ to "show [her] work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[31]

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were "inconsistent with the record reflecting the stable and controlled nature of the severe conditions, the largely unremarkable objective examination findings, and the claimant's wide range of daily

---

claimant uses or has used to relieve pain or other symptoms. *Id.* § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2026).

[30] 20 C.F.R. §416.929(c); *Smartt*, 53 F.4th at 499; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Social Sec. Rlg. (SSR) 16-3p, 2016 WL 1119029, at *7.

[31] *Smartt*, 53 F.4th at 499 (alteration added).

activity."[32] Although each of these factors—improvement, objective examination findings, and daily activities—are appropriate considerations for the ALJ, the ALJ erred by failing to consider the treatment records and activities in their full context when evaluating these factors.[33]

First, when interpreting medical records, context is crucial as "treatment records must be viewed in light of the overall diagnostic record."[34] Thus, symptom improvement must be weighed within the

---

[32] AR 24.

[33] 20 C.F.R. § 419.929(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (activities of daily living))

[34] *Ghanim*, 763 F.3d at 1164. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (requiring the ALJ to carefully consider

context of an "overall diagnostic picture," particularly for mental symptoms, which often wax and wane.[35] Plus, "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."[36]

---

"indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity") (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

[35] *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). *See also* 20 C.F.R. §§ 416.920a(c)(1), 416.929(c)(3); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

[36] *Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement

The ALJ found that Plaintiff's reported symptoms were not consistent with his improvement with therapy and medication management.[37] However, the ALJ's analysis did not adequately consider that Plaintiff's stabilized mood and reduced anxiety symptoms were due not only to medication and therapy but because he stayed home, thereby eliminating the key triggering factor for his anxiety.[38] For instance, during a treatment appointment, Plaintiff's mom confirmed that she had "noticed a definite improvement in [his] anxiety

---

over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

[37] AR 24.

[38] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (An ALJ "may not ignore significant probative evidence that bears on the disability analysis."); *Ghanim*, 763 F.3d at 1164 (recognizing that "treatment records must be viewed in light of the overall diagnostic record").

symptoms," however, this improvement was only to an extent that Plaintiff was now open to the idea of going for daily walks.[39]

Both Plaintiff and his mother reported that he isolates at home because being in public triggers his anxiety, with the last time he went to a store being a year prior.[40] Treatment records are also consistent with Plaintiff's difficulties going places given that Plaintiff's mother accompanied him to his in-person medical visits, and there is no discussion in treatment notes that Plaintiff engaged in activities with non-family members in a public setting.[41] Likewise, Plaintiff's mom assisted him with his teleclaim meeting with the Social Security field

---

[39] AR 361 ("Patient's mother with him today states that she has noticed a definite improvement in anxiety symptoms. Patient has not yet embarked on going for daily walks but he is open to this idea."); AR 304 ("anxiety disorder – he doesn't leave the house").

[40] AR 55, 299–304, 497–98.

[41] *E.g.*, AR 379–80 (Nov. 2022); AR 371–72 (July 2023); AR 368–69 (Aug. 2023); AR 363–64 (Sept. 2023); AR 361–62 (Oct. 2023); AR 359–60 (Nov. 2023); AR 402–03 (March 2024).

office with the interviewer noting, "The claimant identified himself and then his mother took over the answering. He did not seem to want to talk and he gave permission for his mother to answer questions."[42] In addition, most of Plaintiff's later treatment appointments were virtual, allowing Plaintiff to participate in mental-health treatment while remaining at home.[43] This history is consistent with Plaintiff's reported struggles with disabling anxiety when he leaves the house, notwithstanding medication reducing his anxiety attacks when at home. As Dr. Morgan noted, Plaintiff's anxiety symptoms "would be more frequent if client left the home more often or was not on medication."[44]

Thus, without fairly considering that Plaintiff almost exclusively isolated to his home, even for therapy and medication management appointments, substantial evidence does not support the ALJ's reliance on "routinely unremarkable" objective examination findings during

---

[42] AR 280.

[43] *E.g.*, AR 406, 408, 421, 429, 436, 514, 519.

[44] AR 498.

Plaintiff's virtual appointments.[45] Although the record reflects that Plaintiff's symptoms did stabilize in that he went from being observed with an anxious mood, blunted affect, poor insight, and concrete and slowed thinking in November 2023,[46] to an okay mood and congruent affect with linear and goal directed thought processes and fair insight and judgment in May 2024,[47] the ALJ failed to convincingly explain how Plaintiff's stabilized mood in the confines of his home equates to

---

[45] *Smartt*, 53 F.4th at 498 (While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.) (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

[46] AR 408–09.

[47] AR 436–39.

symptom improvement allowing him to sustain competitive work requiring frequent interaction with coworkers and supervisors.[48]

Finally, the ALJ discounted Plaintiff's reported symptoms because he "manages a wide range of daily activity despite anxiety and some depression symptoms."[49] The ALJ may discount a claimant's reported disabling symptoms if he can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms or involving the performing of work-related functions.[50] The ALJ must consider whether the nature of the activities allows for frequent breaks that would be inconsistent with maintaining a daily work schedule and should not penalize the claimant for attempting to engage in normal life activities.[51]

---

[48] *See Garrison*, 759 F.3d at 1017.

[49] AR 24.

[50] *Molina*, 674 F.3d at 1113.

[51] *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she

Here, the ALJ failed to consider that Plaintiff's activities were performed within the confines of his home and did not require in-person interaction. For instance, watching television and playing video games are activities that Plaintiff engaged in at home. His occasional help feeding his family's cat, walking the family dog on occasion, and occasional assistance with meal preparation, laundry, and dishes are shorter-term activities that do not involve interacting with non-family members. In addition, Plaintiff's ability to dress and bathe himself is not inconsistent with his reported anxiety when interacting with others outside his home. The Court is not convinced that Plaintiff's activities are inconsistent with his reported difficulty interacting with others in public and sustaining productive work.

---

encountered in her daily life during the relevant period"); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Because the ALJ's offered reasons for discounting Plaintiff's reported symptoms are not supported by substantial evidence, remand for re-evaluation of such is needed.

**B. Medical Opinions and RFC: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred when evaluating the medical opinions and prior administrative medical findings (PAMFs) and, as a result, the ALJ crafted an incomplete RFC. In response, the Commissioner maintains that substantial evidence supports the ALJ's reasonable evaluation of the medical opinions and crafted RFC. As is explained below, the ALJ's evaluation of the medical opinions and PAMFs relied too heavily on Plaintiff's daily living activities performed within the confines of his home and failed to consider that the noted improvement in the treatment records was experienced when isolating himself to home.

1. <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and PAMF, including whether the medical

opinion or PAMF was consistent with and supported by the record.[52] The factors for evaluating persuasiveness include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[53] Supportability and consistency are the most important factors.[54]

2. <u>The opinions and PAMFs</u>

Each opinion and PAMF agreed that Plaintiff had at least one moderate non-exertional limitation resulting from his difficulties with anxiety and depression. However, they disagreed as to how Plaintiff's anxiety and depression symptoms translate to workplace limitations, i.e., in his interactions with others, or a need for redirection, or a reduced ability to adapt, or difficulty completing a workday.

---

[52] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[53] 20 C.F.R. § 416.920c(c)(1)–(5).

[54] *Id.* § 416.920c(b)(2).

*a. Dr. Morgan and Dr. Carstens*

In March 2024, Dr. Morgan reviewed "DSHS records" and performed a psychological evaluation of Plaintiff.[55] Plaintiff told Dr. Morgan that he experiences high anxiety around a lot of people or when he is under pressure to perform, he experiences panic attacks when he is anxious, and that the frequency of his attacks have reduced with medication, by staying home, and by not being very productive.[56] Plaintiff was cooperative with anxious mood, abnormal memory and concentration, and normal speech, affect, orientation, thought process, perception, fund of knowledge, abstract thought, insight, and judgment.[57] He was unable to correctly perform the 4-digit span forward and 3-digit span backward or spell "world" backward.[58] Dr. Morgan found Plaintiff to be markedly limited in several basic activities, including completing a normal workday and work week

---

[55] AR 497–501.

[56] AR 506–07.

[57] AR 400–01.

[58] AR 501.

without interruptions from psychologically based symptoms and performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision.[59] Dr. Morgan also assessed several moderate non-exertional limitations.[60]

Dr. Carstens reviewed Dr. Morgan's opinion.[61] She agreed that Plaintiff was markedly limited in his ability to complete a normal workday or week and moderately limited in his ability to understand, remember, and persist in tasks by following detailed instructions, but she reduced Dr. Morgan's other limitations:

- from marked to moderate for Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; learn new tasks; adapt to changes in a routine

---

[59] AR 498.

[60] AR 499.

[61] AR 512–13.

work setting; communicate and perform effectively in a work setting; and maintain appropriate behavior in a work setting.

- from moderate to "no significant limitation" for Plaintiff's ability to perform routine tasks without special supervision; make simple work-related decisions; ask simple questions or request assistance; and set realistic goals and plan independently.[62]

The ALJ found Dr. Morgan's and Dr. Carsten's opinions not persuasive because they (1) were not well-supported by clinical examination but instead relied heavily on Plaintiff's subjective symptom reports; (2) were inconsistent with his "wide range of daily activities including watching TV, playing video games with others online, caring for pets, preparing meals, and performing some household chores"; (3) were inconsistent with Plaintiff's lack of significant mental health treatment and his improvement with

---

[62] AR 512.

treatment; and (4) were inconsistent with the medical evidence of record showing "largely normal to mild objective mental findings."[63]

First, as to the ALJ's first basis to discount these opinions, an opinion based on a psychological examination, which included a clinical interview, a mental status examination, and a review of records, typically cannot be discounted as being based solely on the claimant's self-reports.[64] Here, it is not clear what "DSHS records" Dr. Morgan reviewed and thus it is not certain what his longitudinal perspective was.[65] However, Dr. Morgan conducted a clinical interview and a mental status examination, during which he observed challenges with Plaintiff's immediate memory and concentration and noted an anxious

---

[63] AR 26.

[64] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (Psychologist's opinion was based on a clinical interview and mental status evaluation and partially relied on the claimant's self-reports; partial reliance on self-reported symptoms was not a valid reason to reject the opinion.).

[65] AR 506.

mood.[66] Dr. Carstens, also a psychologist, reviewed Dr. Morgan's report and while she disagreed with the severity of several of Dr. Morgan's opined limitations, she confirmed that, notwithstanding the medication that Plaintiff was on, he was markedly limited in his ability to complete a normal workday or week and moderately limited in his ability to understand, remember, and persist in tasks by following detailed instructions, as well as found Plaintiff moderately limited in several other non-exertional abilities.[67] Therefore, although Dr. Carstens did not agree with Dr. Morgan as to the severity of each of Plaintiff's opined limitations, they did agree that Plaintiff was at least moderately limited in several abilities. The ALJ failed to meaningfully explain why Dr. Morgan's opined limitations, which were based on a clinical interview and mental status examination, and Dr. Carstens' reviewing opinion were too heavily based on Plaintiff's self-reported symptoms. Moreover, given Dr. Morgan's and Dr. Carstens' opinion that Plaintiff is at least moderately limited in several abilities, along

---

[66] AR 497–501.

[67] AR 512.

with both Drs. G. and W. recommending that Plaintiff be limited to occasional—not frequent—interactions with coworkers and supervisors, the ALJ failed to meaningfully explain how Dr. Morgan's and Dr. Carsten's opinions were inconsistent with the record.

Second, as to Plaintiff's improvement with therapy and medication, the ALJ failed to adequately consider that, even though Plaintiff reported improvement in his anxiety symptoms with medication, he continued to isolate at home, did not interact with others besides his family and online gamers, and participated in mental-health treatment and medication management from home. As above, substantial evidence does not support the ALJ's decision to discount these medical opinions because Plaintiff improved with treatment.[68]

Finally, Plaintiff's activities do not serve as substantial evidence supporting the ALJ's inconsistency finding.[69] These activities were

---

[68] AR 498.

[69] 20 C.F.R. § 416.920c(c)(2) (comparing the medical opinion with the evidence from nonmedical sources); *Diedrich*, 874 F.3d at 643.

performed within the confines of his home, and there is no record evidence that Plaintiff engaged in any activity (or aggregate of activities) that included interacting with non-family members in person for a period consistent with a workday or engaged in tasks on a set schedule.

Substantial evidence does not support the ALJ's determination that Dr. Morgan's and Dr. Carstens' opinions were not persuasive.

*b.* *<u>Dr. G. and Dr. W.</u>*

Drs. G. and W. reviewed the evidence of record as of March 2024 (which included Dr. Morgan's opinion) and November 2024 (which also included Dr. Carstens' opinion), respectively. Drs. G. and W. each opined that Plaintiff was moderately limited in his ability to "interact appropriately with the general public" and "get along with coworkers or peers without distracting them or exhibiting behavioral extremes" and otherwise found Plaintiff not significantly limited in his non-exertional abilities.[70] As to Plaintiff's social-interaction abilities, they wrote:

> Able to carry out basic task related social interactions with supervisors and coworkers. Overall [medical evidence of

---

[70] AR 72, 79.

> record] suggest claimant is limited to occasional interactions w[ith] coworkers, supervisors & limited interaction w[ith] general public. In a small group, capable of basic work-related social interactions with supervisors and would benefit from redirection and interaction.[71]

The ALJ found these PAMFs "partially persuasive, as they are supported by the evidence outlined and they are consistent with the record."[72] Although the ALJ agreed that Plaintiff was limited socially, the ALJ found Plaintiff to be "slightly less limited socially" than Drs. G. and W. determined, finding that "the record is more consistent with tolerating frequent interaction with co-workers and supervisors."[73] In making this finding, the ALJ relied on Plaintiff's ability to "live with family, play online video games with friends for hours, and go out to walk his dog."[74] The ALJ also discounted the PAMFs' comments that Plaintiff needs redirection and/or more controlled interaction because Plaintiff "can play video games on his own, care for the pool some, and

---

[71] AR 80; AR 72 (wording varying slightly).

[72] AR 25.

[73] AR 25.

[74] AR 25.

he could do laundry for himself if his mother did not."[75] Plus, the ALJ found that the terms "basic tasks," "limited interaction," and "would benefit from redirection and interaction" are not defined terms and thus not useful for the RFC.[76]

Again, the ALJ's findings fail to account for Plaintiff's isolation at home. Other than Dr. Morgan's psychological examination, it appears from the record that Plaintiff did not appear for treatment appointments in person or without being accompanied by his mother.[77] Drs. G. and W. recommended limiting Plaintiff to occasional—not

---

[75] AR 25.

[76] AR 26.

[77] *E.g.*, Attending appointment virtually: AR 464–69 (Nov. 2023: initial psychiatry assessment: noting that Plaintiff presents with "symptoms of anxiety, irritability, and sadness that are hindering him from having a good quality of life"); AR 406–36 (Nov. 2023–May 2024: therapy and psychological follow-ups); Accompanied by mom: AR 379 (Nov. 2022); AR 371 (July 2023); AR 368 (Aug. 2023); AR 363 (Sept. 2023); AR 361 (Oct. 2023); AR 359 (Nov. 2023); AR 402 (March 2024).

frequent—interactions with coworkers and supervisors. This social limitation was to allow Plaintiff to stay on task and complete a workday notwithstanding his anxiety and depression symptoms. By rejecting an occasional-interaction limitation and crafting an RFC allowing for frequent interaction, the ALJ consequentially erred.[78]

Moreover, the ALJ failed to meaningfully discuss Drs. G. and W.'s opinion that Plaintiff would work best in small groups given his need for redirection. Contrary to the Commissioner's argument otherwise,

---

[78] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015) (analyzing whether the ALJ properly incorporated specific "imperatives" about the claimant's limitations rather than mere recommendations); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174–75 (9th Cir. 2008) (discussing whether the ALJ properly incorporated the limitation identified by the physicians); *see also* SSR 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing RFC in Initial Claims.

this small-group limitation directly relates to the workplace and, if adopted, should be discussed with the vocational expert.[79]

*c.* *Dr. McDonald*

In August 2025, Dr. McDonald reviewed the record and found Plaintiff was moderately limited in adapting to changes, stating:

> Consulting examiner noted marked impairment in adapting to changes, while a later review noted ability to adapt as moderate. There is an absence of documentation to support any greater impairment than moderate in the area of ability to adapt.[80]

Other than the opinion that Plaintiff would be moderately limited in his ability to adapt, the ALJ found Dr. McDonald's opinion "largely persuasive."[81] The ALJ discounted Dr. McDonald's adaptation opinion because Plaintiff "manages a wide range of daily activity despite his

---

[79] *See* AR 63 (The vocational expert testified that a worker performing the identified jobs and who requires supervision up to one third of the work day after the training period would not be able to perform competitive work). *See also* SSR 96-8p.

[80] AR 557.

[81] AR 26.

symptoms, including caring for pets, performing some household chores, and engaging in sustained leisure activity."[82] Again, in discounting Dr. McDonald's opined limitation, the ALJ relied too heavily on home-bound activities, which were performed at Plaintiff's own schedule and leisure, along with reminders from his mother.[83]

## IV. Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process. A psychological examination is to be ordered; the consultative examiner is to be given sufficient medical records to allow for a longitudinal perspective, including the reports from Dr. Morgan and Dr. Carstens.[84] Also, if the ALJ discounts the

---

[82] AR 26.

[83] AR 303 ("Jacob needs reminded if asked to compete a task and also takes some time to follow through.").

[84] The record must clearly identify what medical records the examiner reviewed.

mother's statement, the ALJ must provide germane reasons for doing so.[85]

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 20th day of November 2026.

EDWARD F. SHEA
Senior United States District Judge

---

[85] *See Fain v. Bisignano*, 191 F.4th 1161, 1168–70 (9th Cir. 2026).